NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

**Electronically Filed
Intermediate Court of Appeals
CAAP-10-0000148
23-FEB-2012
09:58 AM**

NO. CAAP-10-0000148

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

HIWALANI P S HOLDINGS, LLC and ROBERT N. FABRIQUE,
Plaintiffs-Appellants, v.
WELLS FARGO BANK, N.A., AS TRUSTEE FOR OPTION
ONE MORTGAGE LOAN TRUST 2007-6 ASSET-BACKED
CERTIFICATES SERIES 2007-6, Defendant-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 09-1-1847)

MEMORANDUM OPINION
(By:  Foley, Presiding J., Fujise and Reifurth, JJ.)

Plaintiffs-Appellants Hiwalani PS Holdings, LLC
(Holdings) and Robert N. Fabrique (Fabrique) (collectively,
Plaintiffs) appeal from the (1) Final Judgment filed on October
18, 2010 in the Circuit Court of the First Circuit[1] (circuit
court) and (2) "Order Granting in Part and Denying in Part
Defendant Wells Fargo Bank, N.A. (Bank), as Trustee for Option
One Mortgage Loan Trust 2007-6 Asset-Backed Certificates, Series
2007'6 [sic] Motion for Attorneys' Fees and Costs," (Order re:
Attorneys' Fees and Costs) filed on December 27, 2010 in the
circuit court.  The circuit court entered Final Judgment pursuant
to its "Order (1) Denying Plaintiffs' Motion for Summary
Judgment, filed September 3, 2010; and (2) Granting [Bank's]
Motion for Summary Judgment, filed September 7, 2010" (Order).

---

[1]  The Honorable Rom A. Trader presided.

The Final Judgment resolved all claims in favor of Bank and against Plaintiffs.

On appeal, Plaintiffs contend the circuit court erred when it granted Bank's Motion for Summary Judgment. Plaintiffs also contend the circuit court erred when it granted Bank's Motion for Attorneys' Fees and Costs.

## I. BACKGROUND

By Assignment of Mortgage recorded on March 20, 2009, Bank became holder of Borrower's Mortgage recorded in the State of Hawaiʻi Bureau of Conveyances on April 25, 2007 for property at 116 Hiwalani Loop, Pukalani, Hawaiʻi, identified by Tax Map Key No. 2-3-054-065 (Property). In 2009, Borrower was in default on her Mortgage, having failed to make her monthly payments. American Home Mortgage Servicing, Inc. (AHMSI), the Mortgage servicer, communicated with Borrower regarding loan modification and, according to Bank, it appears Borrower was given two opportunities to reinstate the Mortgage before the foreclosure sale. Bank acknowledged in its interrogatories that "it does not appear the default was cured by the day of the Sale," but further stated "it is unclear whether the Mortgage was in default on the day of the Sale."

Bank published a notice in a newspaper of general circulation in the State of Hawaiʻi informing the public of Bank's intent to foreclose on the Property at a public auction on June 5, 2009, pursuant to its power of sale[2] under the Mortgage

---

[2] The mortgage provided in pertinent part:

21. Acceleration; Remedies. If any installment under the Note or notes secured hereby is not paid when due, or if Borrower should be in default under any provision of this Security Instrument, or if Borrower is in default under any other mortgage or other instrument secured by the Property, all sums secured by this Security Instrument and accrued interest thereon shall at once become due and payable at the option of Lender without prior notice, except as otherwise required by applicable law, and regardless of any prior forbearance. In such event, Lender, at its option, and subject to applicable law, may then or thereafter invoke the power of sale and/or any other remedies or take my other actions permitted by applicable law. Lender will collect all expenses incurred in pursuing the remedies described in this

and Hawaii Revised Statutes (HRS) § 667-5 through § 667-10 (2009). On May 16, 2009, Borrower wrote a letter to AHMSI explaining why she had become delinquent on her Mortgage payments and requesting a loan modification. On May 19, 2009, AHMSI replied to Borrower, noting it had received a workout package regarding her Mortgage loan and informing Borrower it would take up to fourteen days from May 19, 2009 "to complete the initial review and analysis," after which a negotiator would contact Borrower to discuss available options. AHMSI advised Borrower that its review did not relieve Borrower of her obligation to maintain payments on her Mortgage nor did the review "suspend or forestall the foreclosure process in any way during the review and consideration period." Id. On June 3, 2009, Borrower faxed documentation to AHMSI verifying her ex-husband's new employment and salary. At 4:51 p.m. on June 4, 2009, AHMSI placed Borrower's "file on hold" awaiting approval of a "Loss Mitigation Workout." At 5:49 p.m., AHMSI "[received] additional income stopped [foreclosure]." At 7:21 p.m., LPS Default Solutions postponed the sale, giving the reason for postponement as "Loss Mitigation." At 7:22 p.m., LPS Default Solutions approved the hold for a "Loss Mitigation Workout."

Despite the approval to postpone the foreclosure, the foreclosure auction was held the next day, June 5, 2009. On June 23, 2009, apparently unaware of the auction and sale, AHMSI "extended [foreclosure] hold to 08/30/09." On June 30, 2009, AHMSI noted that Borrower "now has sufficient income to get back on track just needs help on deli[n]quency and bringing loan current[.]" Id.

At the June 5, 2009 auction, Fabrique placed the winning bid and wrote two checks for a total of $30,000, representing "at least 10% of the highest successful bid price" of $232,000. Fabrique was given a receipt documenting this

Paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

transaction. Thereafter, Fabrique assigned his rights to purchase the Property to Holdings. Soon after, Bank informed Fabrique of its intent to cancel the sale and returned Fabrique's checks, which were accepted "under protest." Bank explained in its interrogatories that it did not close the sale with Plaintiffs because

> its agents were in the process of negotiating a loan modification with Borrower immediately prior to the Sale. [Bank] notified Routh Crabtree Olsen to postpone the auction prior to the Sale. Due to a miscommunication, Routh Crabtree Olsen did not receive the message and the Sale went forward on June 5, 2009. Plaintiff Fabrique was subsequently advised that the Sale was being cancelled and his deposit was promptly returned with interest.

Bank refused to go through with the sale of the Property.

On August 10, 2009, Plaintiffs filed their Complaint in circuit court, seeking specific performance, or in the alternative, breach of contract damages. The parties subsequently stipulated and agreed to dismiss the specific performance claim on October 4, 2010.

On September 3, 2010, Plaintiffs moved for summary judgment on their damages claim, arguing that when Bank failed to close the sale, it breached the valid contract that was formed at the public auction. On September 7, 2010, Bank filed its Motion for Summary Judgment, arguing the sale was invalid because Borrower had cured the default prior to the auction and therefore, any alleged contract was void.

On October 18, 2010, the circuit court entered its Order and Final Judgment in favor of Bank. On November 1, 2010, Bank filed a Motion for Attorneys' Fees and Costs. On November 8, 2010, Plaintiffs filed a notice of appeal from the Final Judgment. On December 27, 2010, the circuit court entered its "Order re: Attorneys' Fees and Costs" in favor of Bank. On January 3, 2011, Plaintiffs filed a notice of appeal from the Order re: Attorneys' Fees and Costs. On January 19, 2011, Plaintiffs filed an amended notice of appeal to reflect their intent to appeal from both the Final Judgment and the Order re: Attorneys' Fees and Costs.

4

## II.  STANDARDS OF REVIEW

On appeal, the grant or denial of summary judgment is reviewed *de novo*.  *See State ex rel. Anzai v. City and County of Honolulu*, 99 Hawai'i 508, [515], 57 P.3d 433, [440] (2002); *Bitney v. Honolulu Police Dep't*, 96 Hawai'i 243, 250, 30 P.3d 257, 264 (2001).

[S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.  The evidence must be viewed in the light most favorable to the non-moving party.  In other words, we must view all of the evidence and inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Kahale v. City and County of Honolulu*, 104 Hawai'i 341, 344, 90 P.3d 233, 236 (2004) (citation omitted).

Nuuanu Valley Ass'n v. City & Cnty. of Honolulu, 119 Hawai'i 90, 96, 194 P.3d 531, 537 (2008).

## III.  DISCUSSION

The appellate court reviews "the circuit court's grant or denial of summary judgment *de novo*.  Under the *de novo* standard, [the appellate court examines] the facts and answer[s] the question without being required to give any weight to the circuit court's answer to it."  Hawaii Ventures, LLC, v. Otaka, Inc., 114 Hawai'i 438, 457, 164 P.3d 696, 715 (2007) (internal quotation marks, citations, and brackets omitted).

Here, Plaintiffs contend the circuit court erred when it granted summary judgment to Bank.  Plaintiffs argue that the public auction was a legitimate auction, Fabrique was the successful high bidder, and when Bank accepted Fabrique's down payment of $30,000, Bank and Fabrique had entered into a legally binding contract.

On the other hand, Bank asserts it was entitled to summary judgment because AHMSI and Borrower entered into a pre-auction agreement to modify the loan, effectively curing the underlying default and making any auction a "legal nullity" and

5

any contract deriving from the auction "void and unenforceable" because the foreclosure sale was invalid pursuant to HRS § 667-5.

HRS 667-5 provides for the foreclosure process where a "power of sale is contained in a mortgage." The statute "specifically requires breach of a condition of the mortgage as a condition precedent to foreclosure." Lee v. HSBC Bank USA, 121 Hawai'i 287, 290, 218 P.3d 775, 778 (2009). Borrower's Mortgage provided that "[i]f any installment . . . is not paid when due, . . . all sums . . . shall at once become due and payable at the option of the Lender[.]" Furthermore, the "[l]ender, at its option, and subject to applicable law, may then or thereafter invoke the power of sale and/or any other remedies[.]" Borrower's Mortgage empowered the Bank to invoke the power of sale in the event of a breach of the contract, such as failing to make the Mortgage payments.

Pursuant to the Borrower's Mortgage, when Bank invoked its power of sale and published the "Notice of [Banks'] Intention to Foreclose Under Power of Sale" (Notice of Sale) on Borrower's Property, Bank was required to "sell the Property at the time and place and under the terms specified in the notice of sale." The terms of the sale provided in the Notice of Sale included "[a]t the close of the auction, Purchaser shall pay at least 10% of the highest successful bid price ("Bid") in cash, or by cashier's or certified check[.]" Another term was "[t]he property shall be conveyed by Mortgagee by mortgagee's quitclaim conveyance, provided by Mortgagee, within 30 days after the auction," as long as the Purchaser met his obligations as outlined in the Notice of Sale. Id. The Mortgagee reserved the right to retain the 10% down payment as liquidation damages should there be "any delay in performance by Purchaser which prevents the closing from occurring within 30 days after the auction." Id. Finally, "[b]y submitting the Bid, Purchaser acknowledges reading the terms of conditions set forth in this notice and agrees to be bound thereby[.]" Id.

It is undisputed that Borrower had defaulted on her loan. Bank argues that "the pre-Auction agreement to modify the loan and postpone the sale of the Property, while not a *per se* 'cure', obviated the Borrower's underlying default[,]" effectively curing the default and voiding the sale. Bank points to a series of entries made in AHMSI's communication tracking system on the eve of the sale to argue that where AHMSI's notes indicated a hold on the foreclosure had been approved, a pre-auction agreement had been reached.

Bank relies on Lee to support its argument that the auction was erroneously conducted and the sale rightfully voided. Lee is inapposite to the instant case. In Lee, the defaulting borrowers paid the delinquent amount on their loan before the sale, thereby curing their default. Lee, 121 Hawaiʻi at 290, 218 P.3d at 778. The foreclosure counsel was advised to halt the foreclosure sale, but the sale went forward anyway. Id. Because the borrowers in Lee were no longer in default, they were no longer in breach of the mortgage, and defendant no longer had the power of sale pursuant to the mortgage and HRS § 667-5. Lee, 121 Hawaiʻi at 291, 218 P.3d at 779. Therefore, the foreclosure sale was invalid. Id.

That is not the case before us. Here, Bank acknowledged in its interrogatories that "it does not appear the default was cured by the day of the sale." Bank also states that "it is unclear whether the Mortgage was in default on the day of the Sale," but points to nothing other than the alleged pre-auction agreement to support the perceived lack of clarity. Id.

Bank fails to document any pre-auction agreement that clearly demonstrates Borrower's default had been cured prior to the auction. There are what appear to be internal records by LPS Default Solutions documenting the intent to place the foreclosure on hold and work out a loss mitigation, but there is no indication that a pre-auction agreement was made with Borrower or

7

that she was even aware her case was on hold. Furthermore, there is no documentation that Borrower was not in default on the day of the auction and, in fact, documentation exists that on June 30, 2009, Borrower was still in default because AHMSI notes Borrower "just needs help on deli[n]quency and bringing loan current[.]"

Whether there was a pre-auction agreement that cured Borrower's default and caused the subsequent auction to be invalid is a genuine issue of material fact that "would have the effect of establishing or refuting" whether the requirement was met that a borrower be in default before a foreclosure sale takes place. Viewing the evidence in the light most favorable to the non-moving party on this issue, we conclude summary judgment should not have been granted.

## IV. CONCLUSION

The (1) Final Judgment filed on October 18, 2010 and (2) "Order Granting in Part and Denying in Part Defendant Wells Fargo Bank, N.S. (Bank), as Trustee for Option One Mortgage Loan Trust 2007-6 Asset-Backed Certificates, Series 2007'6 [sic] Motion for Attorneys' Fees and Costs" filed on December 27, 2010 in the Circuit Court of the First Circuit are vacated and remanded for proceedings consistent with this opinion.

DATED: Honolulu, Hawai'i, February 23, 2012.

On the briefs:

Steven K.S. Chung
Chanelle M.C. Fujimoto
for Plaintiffs-Appellants

Paul Alston
J.Blaine Rogers
(Alston Hunt Floyd & Ing)
for Defendant-Appellee

*Daniel R. Foley*
Presiding Judge

Associate Judge

Associate Judge

8